UNITED STATES *v.* EDW. JEFFERSON, INC. (No. 3408)[1]

[1] T. D. 45275.

United States Court of Customs and Patent Appeals, November 2, 1931

*Charles D. Lawrence*, Assistant Attorney General (*Thomas J. McKenna*, special attorney, of counsel), for the United States.
*Puckhafer, Rode & Tompkins* (*J. Stuart Tompkins* of counsel) for appellee.

[Oral argument October 14, 1931, by Mr. Lawrence and Mr. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise here involved consists of what are known as ledger blades or ledger shear blades. They are designed for use in pile-shearing machines. The exhibit on file, representing the articles as imported, consists of a metal plate about 33 inches long by 4⅓ inches wide and having a thickness of three-tenths of 1 inch. As imported the blade is not fully sharpened but one edge of it is beveled, the beveled portion being about 1 inch in width. Near the un-beveled edge it is perforated with 20 holes, each 1½ inches long by one-half of 1 inch wide. These perforations are for the admission of bolts or screws by means of which the blade is securely fastened in or to the machine with which it is to function.

The merchandise was invoiced as "2 strong shear blades," is described by the appraiser in his advisory report to the collector as "ledger blades," and was classified by the latter official and assessed for duty at 35 per centum ad valorem as unfinished parts of textile machinery under paragraph 372 of the Tariff Act of 1922.

The importer protested the classification, claiming it dutiable under paragraph 356, which reads:

PAR. 356. Planing-machine knives, tannery and leather knives, tobacco knives, paper and pulp mill knives, roll bars, bed plates, and all other stock-treating parts for pulp and paper machinery, shear blades, circular cloth cutters, circular cork cutters, circular cigarette cutters, meat-slicing cutters, and all other cutting knives and blades used in power or hand machines, 20 per centum ad valorem.

There was an alternative claim under paragraph 1459 in connection with paragraph 1460, but in the argument before us this latter was not insisted upon. It is not regarded by us as applicable and will not be further considered.

The Customs Court held the merchandise classifiable under that portion of paragraph 356 which provides:

\* \* \* and all other cutting knives and blades used in power or hand machines, 20 per centum ad valorem.

From the judgment the Government appeals.

The text of the portions of paragraph 372, essential to be here set out, reads:

PAR. 372. \* \* \* all other textile machinery or parts thereof, finished or unfinished, not specially provided for, 35 per centum ad valorem; \* \* \* all other machines or parts thereof, finished or unfinished, not specially provided for, 30 per centum ad valorem; \* \* \*

In *Maddaus* v. *United States*, T. D. 40814, the United States Customs Court held knives and blades designed to cut *metal* and used in power-driven machines dutiable under paragraph 356 as cutting knives and blades used in power or hand machines.

In Abstract 5120, 53 Treas. Dec. 876, merchandise, presumably of the exact character here involved, was at issue. The said Customs Court held it dutiable under the same provision of paragraph 356 as was applied to blades for metal cutting in T. D. 40814, *supra*. The claim of the protest in Abstract 5120, however, did not set up paragraph 356 but was for 30 per centum ad valorem under the "all other machines," etc., provision of paragraph 372, *supra*. So the protest was overruled. Neither party appealed, but, following the decision, an appraiser at the port of Boston addressed a letter to the Bureau of Customs, which appears to have resulted in the issuance of instructions to collectors to continue to classify ledger blades as parts of *textile* machinery at 35 per centum, notwithstanding the decision of the Customs Court.

These instructions were embraced in T. D. 42725, from which we quote the following excerpt:

The appraiser states that he agrees with the decision that the spiral cutters or shear blades when imported separately are properly dutiable at 20 per cent ad valorem under paragraph 356 but takes exception to the same classification for ledger blades which have no cutting edge and are simply bedplates against which the blades revolve without touching. He states that as the ledger blades are permanently fastened to the framework of the machines which are used in the textile industry, his office would advisorily classify them under paragraph 372. \* \* \*

Under the last above-mentioned Treasury decision, therefore, the collector classified the involved goods, and the issue now before us was made up.

It is proper to state that no question is raised here as to the pile-shearing machines being textile machinery in the sense of paragraph 372, and we have not been called upon to consider that question.

The proof in the instant case establishes the fact that the representative article in issue is not a bedplate nor any part of a bedplate. It is a blade which is securely attached to a part known as a blade back. This blade back is no part of the bedplate but is fastened to bearings at each end of the machine. The bedplate is the member or part over which the plush passes for the shearing operation.

The ledger blade is attached in such a manner as that it presents a sharpened edge to the goods passing over the bedplate at an angle which, by the operation of another part referred to as a circular or spiral shear blade, causes the ledger blade to shear the pile. It operates, as we understand it, upon the principle of the ordinary lawn mower, and it is the sharpened edge of the ledger blade which does the actual shearing when the spiral or circular member presses the fibers against it.

One of these spiral or circular members is filed as an illustrative exhibit in the case, and it has no cutting edge, one of its edges having rather a file-like finish. Also there was filed as another illustrative exhibit a ledger blade which had been sharpened.

It is obvious, therefore, from this record that the merchandise here involved is either not the same as that which the Boston appraiser was describing in the letter to the Customs Bureau which led to T. D. 42725, or else that official fell into error in describing it.

It is probable that, as imported, the article of which he wrote had not been sharpened so as to have a cutting edge, and this fact might easily have misled the appraiser into the belief that it is the spiral blade which does the cutting. The testimony here, in connection with the exhibits, shows that as to the involved articles it is the edge of the ledger blade itself which actually performs the cutting operation, the function of the spiral or circular part with its file edges being to press the fibers, which have been raised by brushing, against the sharp edge of the ledger blade.

Knight's American Mechanical Dictionary, Volume II, page 1283, gives the following definition or description:

Ledger blade. The stationary blade with a rectilinear edge, placed as a tangent to the spirally bladed cylinder, by which cloth is shorn and the nap reduced to length.

The same authority says:

Another form of cloth-shearing machine has a semicircular ledger blade, and a large revolving wheel containing 8 small cutting disks, revolved by planetary pinions, and acting as *shears in connection with the edge of the ledger blade*. (Italics ours.)

In the definition of cloth-shearing machines, a paragraph reads:

In use, the cylinder revolves at about the same rate [1,200 turns in the minute], and in contact with the edge of a long, thin plate of steel, called the ledger blade, *which has a very keen rectilinear edge, whetted to an angle of about 45°;* * * * The edge of the ledger blade is sharpened by grinding it against the cylinder itself, with flour, emery, and oil, by which the two are sure to agree throughout their whole length.   (Italics ours.)

The description of the operation of the machines which carry the involved articles, given by the witnesses in this case, conforms in all essential respects to the description of operation given in Knight's Dictionary, from which we have quoted.

In the Government's brief considerable emphasis is laid upon the fact that the articles as imported have not been sharpened.

It is argued, therefore, that they are "unfinished," and since paragraph 372 provides for unfinished textile machinery and parts, while paragraph 356 has no provision for unfinished articles, paragraph 372 (the articles being for use in textile machines) is more specific.

With this contention we do not agree.   As a matter of fact, the imported article has been given a certain bevel, evidently in preparation for sharpening; and, in any event, to hold that the full sharpening which may be required for satisfactory use puts them in the class of unfinished blades necessitates a refinement of reasoning which, if adopted, might lead to illogical results in classifying other articles requiring edging or sharpening for their use.

We agree with the Customs Court that the unsharpened condition does not militate against their classification under paragraph 356.

In deciding that the merchandise falls under the latter portion of paragraph 356, as being embraced in "all other cutting knives and blades used in power or hand machines," the Customs Court followed its decision in Abstract 49760, 47 Treas. Dec. 1142, wherein it was said:

* * * The latter provision [paragraph 356] we hold to be the more specific, since it clearly carves out of the general provision for parts of textile machines such parts as consist of "sheer blades, circular cloth cutters * * * and all other cutting knives or blades used in power or hand machines."   Knife or blade parts of textile machinery * * * consequently are excluded from paragraph 372. * * *

The merchandise there involved was "spiral file-cut knives for shearing machines to shear pile fabric."   Evidently the spirals there were of the same character as those typified by one of the illustrative exhibits in the instant case.

There was no appeal from the Customs Court's decision in Abstract 49760, and the administrative practice in classifying the spirals has evidently since conformed to it.

It is, therefore, the holding of the Customs Court in Abstract 49760, *supra*, and in the instant case, that the spiral parts involved

in the first and the ledger blades involved in the latter, both used in pile-shearing operations, are comprehended in "all other cutting knives or blades used in power or hand machines"; that this language carves out of the general provision for textile machinery or parts thereof such parts as those there and here involved, and that this "carving out" renders the latter part of paragraph 356 more specific to the articles than the language of paragraph 372.

A majority of this court do not find themselves in agreement with this particular construction of the court below, as to specificity under the language by it applied, but we do hold that, under the facts of this record, taken in connection with the scientific or mechanical definitions and descriptions quoted, the articles in issue are shear blades and as such fall under the specific *eo nomine* provision for shear blades contained in paragraph 356.

The protest claim covers both "shear blades" and "all other cutting knives and blades used in power or hand machines." The rate of duty is the same as to both—20 per centum ad valorem.

It results, therefore, that the judgment of the Customs Court sustaining the protest and reversing the decision of the collector should be, and the same is, *affirmed*.